**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**JAMES ARTHUR PUCCINELLI, JR.** *
*
v. * **Civil Case No. ELH-17-2246**
*
**COMMISSIONER, SOCIAL SECURITY**[1] *
*
*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-dispositive motions. [ECF Nos. 9, 12]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Social Security Administration ("SSA") if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that Mr. Puccinelli's motion be denied, that the SSA's motion be granted, and that the SSA's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Mr. Puccinelli filed an application for Disability Insurance Benefits ("DIB") on June 12, 2013, alleging a disability onset date of January 1, 2007.[2] (Tr. 195-98). Mr. Puccinelli's Date Last Insured ("DLI") is December 31, 2011, meaning that he had to establish disability on or before that date to qualify for benefits. (Tr. 19, 199). His application was denied initially on

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

[2] Mr. Puccinelli later amended his alleged onset date to October 1, 2006. (Tr. 44).

August 1, 2013, and on reconsideration on March 14, 2014. (Tr. 108-16, 117-39). An Administrative Law Judge ("ALJ") held a hearing on March 2, 2016, at which Mr. Puccinelli was represented by counsel. (Tr. 36-99). Following the hearing, the ALJ determined that Mr. Puccinelli was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 16-34). The Appeals Council denied Mr. Puccinelli's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Puccinelli suffered from the severe impairments of "lumbar degenerative disc disease; lumbar radiculopathy; postoperative lumbar laminectomy syndrome; reflex sympathetic dystrophy of lower limb; and lumbosacral radiculopathy." (Tr. 21). Despite these impairments, the ALJ determined that Mr. Puccinelli retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can perform no climbing of ladders or scaffolds and occasional climbing of ramps and stairs, stooping, kneeling, crouching, crawling, and balancing. The claimant can have no exposure to hazards such as unprotected heights or moving mechanical parts or vibration and occasional exposure to extreme cold.

(Tr. 22). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Puccinelli could perform his past relevant work as a customer service representative, and that, therefore, he was not disabled. (Tr. 28).

Mr. Puccinelli disagrees. He raises three primary arguments on appeal: (1) that the ALJ erred in evaluating Listing 1.04; (2) that the ALJ failed to properly weigh the medical opinion evidence in determining his RFC; and (3) that the ALJ failed to properly evaluate his credibility. Each argument lacks merit for the reasons discussed below.

First, Mr. Puccinelli argues that the ALJ erred in evaluating Listing 1.04. Pl. Mot. 16-18. Even assuming *arguendo* that the ALJ had erred, for example, in assessing compromise of the nerve root or some other element of Listing 1.04, that error would be harmless. To meet a

listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). The claimant bears the burden of proof at the first four steps of the sequential evaluation, including the listing analysis at step three. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the burden rests with the claimant, through the first four steps of the sequential evaluation, to present evidence establishing disability during the relevant period). In this case, Listing 1.04A requires, as one of the elements, "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04. Mr. Puccinelli cites to several positive straight-leg raising tests in his medical history, but none of those records indicates that the tests were performed in both the sitting and supine positions. Pl. Mot. 17 (citing Tr. 313, 324, 345, 411). In light of the fact that Mr. Puccinelli did not apply for benefits until 2013, with a DLI of December, 2011, there would be no way for him to obtain retroactively the necessary evidence of positive straight-leg raising tests in the sitting and supine positions during the relevant time frame for assessing disability. *See, e.g.*, *Bishop v. Colvin*, Civil Action No. 14-4068-CM, 2015 WL 5472494, at *5 (D. Kan. Sept. 17, 2015) ("While there is evidence of positive straight leg raise tests, most do not specify plaintiff's posture. The two positive tests that do specify posture were performed in the seated position. Thus, there is no evidence that any straight leg raise tests were conducted in the supine position. Without this evidence, plaintiff cannot show that he met all of the requirements of Listing 1.04A."); *Fripp v. Colvin*, Civil Action No. 9:14-0310-MGL-BM, 2015 WL 3407569, at *5 (D.S.C. May 27, 2015) (noting that a positive straight leg raising test without any indication of whether the test was both sitting and supine does not suffice to establish the requirements of Listing 1.04A, "and that alone is fatal to his claim"); *Martin v. Colvin*, Civil Action No. 1:12-CV-062-BL, 2013 WL 3155939, at *5

(N.D. Tex. June 21, 2013) ("Although Plaintiff correctly notes that Dr. Mehta reported positive straight-leg raising tests, the medical evidence of record does not indicate positive tests, both sitting and supine. . . . The lack of positive straight-leg raising tests in both the supine and sitting positions demonstrates that the Plaintiff has failed to provide and identify medical signs and findings that support *all* criteria of Section 1.04 of the Listing of Impairments.") Accordingly, Mr. Puccinelli is simply unable, on the medical record he has available to him, to meet his burden to prove that Listing 1.04A is met, so any other error in the ALJ's Listing 1.04A analysis is harmless.

Mr. Puccinelli next contends that the ALJ erred by not assigning controlling weight to the opinions of his treating physicians, Drs. Yankey and Hagos. Pl. Mem. 18-25. Social Security regulations provide that:

> If we find that a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, if a treating source's medical opinion is not assigned controlling weight, the ALJ should consider the following factors in determining the weight to give the opinion: (1) the length of the treatment relationship, including its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. *Id.* §§ 404.1527(c), 416.927(c).

In the instant case, the ALJ provided a detailed explanation for the assignments of "little" or less than controlling weight to the opinions rendered by Drs. Yankey and Hagos. With respect to Dr. Yankey, the ALJ noted that she provided treatment only sporadically; that she was not a

specialist or the primary provider of treatment for Mr. Puccinelli's back pain; and that other medical records, particularly the treatment records from Dr. Hagos, contradicted the extreme limitations suggested by Dr. Yankey. (Tr. 26). The ALJ also noted that Dr. Yankey had assessed mental limitations, although there were no objective findings to substantiate mental health issues and Mr. Puccinelli had not reported any mental difficulties to any treatment provider before his DLI. *Id.* In light of the proper application of the relevant factors and the substantial evidence cited by the ALJ, there is no error in the assignment of "little weight" to Dr. Yankey's opinion.

The assignment of weight to the opinion of Dr. Hagos is best considered along with Mr. Puccinelli's third argument regarding the ALJ's assessment of Mr. Puccinelli's subjective assertions of disabling pain. Dr. Hagos's medical treatment records, in the 2011-2012 time frame, are replete with a variety of different statements indicating that Mr. Puccinelli was working in a position involving manual labor. *See, e.g.*, (Tr. 504) (record from September 14, 2011, indicating that Mr. Puccinelli was "doing a lot of concrete work"); (Tr. 513) (record from November 7, 2011, stating that Mr. Puccinelli's "pain which is exacerbated by heavy manual work, is improved and well controlled"); (Tr. 515) (record from December 5, 2011, describing that the "spinal cord stimulator is working well but he still gets some break through pain when doing strenuous construction work"); (Tr. 519) (record from January 30, 2012, stating: "He continues to have low back pain that is made worse by working."). These records do not reflect a single statement that is simply copied over into subsequent treatment notes, but differing descriptions at each visit corroborating that Mr. Puccinelli was working in manual labor during the months before and immediately after his DLI. During his telephonic testimony at Mr. Puccinelli's hearing, Dr. Hagos confirmed that his contemporaneous treatment notes would be

the best source of information regarding what Mr. Puccinelli told him at a particular time. (Tr. 59-60).

The evidence from Dr. Hagos's treatment notes explains both the assignment of less than controlling weight to Dr. Hagos's opinion and the finding that Mr. Puccinelli's subjective assertions of disabling pain before his DLI were not entirely reliable. Dr. Hagos continued treating Mr. Puccinelli for years after his 2011 DLI, and wrote his medical opinion more than a year and a half later, on August 14, 2013. (Tr. 683-85). Although Dr. Hagos asserted in his opinion that the medical conditions he described in 2013 had existed since October 11, 2010, (Tr. 684), the notions that Mr. Puccinelli could only sit for "0-1" hours in a workday and stand or walk for "0-1" hours in a workday are entirely inconsistent with a person capable of performing construction work, lots of concrete work, or manual labor, (Tr. 681). In light of the ALJ's explanation, citing in large part to the evidence from Dr. Hagos's treatment records, I am able to understand the basis for the ALJ's assignment of weight to Dr. Hagos's opinion and the ALJ's determination that Mr. Puccinelli's allegations of disabling pain prior to the DLI were unreliable.[3] Importantly, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls to the ALJ. *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir.

---

[3] Also, in assessing the merits of Mr. Puccinelli's subjective assertions of pain, in accordance with governing law, the ALJ provided a comprehensive analysis consisting both of objective evidence and subjective statements made by Mr. Puccinelli to his medical providers. *See Hines v. Barnhart*, 453 F.3d 559, 563-64 (4th Cir. 2006) (permitting a claimant to rely on subjective testimony to establish the disabling effects of a medically determinable impairment); *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) ("[S]ubjective evidence of pain intensity cannot be discounted solely because of objective medical findings."). Here, the ALJ cited instances where Mr. Puccinelli reported good or very good pain relief following various treatments, and, as noted above, reported to his medical providers that he had functional capacities far exceeding his testimony at his hearing. (Tr. 25).

2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Here, the ALJ adequately supported his findings with substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 12];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 9];

3. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: June 6, 2018

/s/
Stephanie A. Gallagher
United States Magistrate Judge